IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON NORRIS, | § | |
| | § | |
| Petitioner, | § | |
| | § | Civil Action No. 3:18-CV-2492-D |
| VS. | § | |
| | § | |
| JIE BAO, | § | |
| | § | |
| Respondent. | § | |

MEMORANDUM OPINION
AND ORDER

In this action, petitioner Jason Norris ("Norris") applies for confirmation of an arbitration award entered in his favor against respondent Jie Bao ("Dr. Bao"). Dr. Bao moves to modify or vacate the award, contending that the arbitrator exceeded the scope of her authority under the parties' arbitration agreement, or, in the alternative, made an evident miscalculation of figures in connection with the damages awarded to Norris. Concluding that the arbitrator did not exceed the scope of her authority in calculating compensatory damages or make an evident material miscalculation of figures, the court grants Norris' application for confirmation of the arbitration award, denies Dr. Bao's motion to modify or vacate the arbitration award, and enters judgment confirming the arbitration award.

I

In 2013 Norris and Dr. Bao formed QDuality, Inc. ("QDuality"), a technology start-up company, to develop and commercialize quantum dot spectrometer ("QDS") technology that Dr. Bao had invented while completing postdoctoral research at the Massachusetts Institute

of Technology ("MIT"). Norris provided the initial start-up capital to QDuality in the form of a $500,000 convertible promissory note. Under the terms of a Stockholders Agreement ("Stockholders Agreement"), Dr. Bao received 900,000 shares of QDuality, Norris received 420,000 shares, and a third party received 150,000 shares.

Relevant to the current dispute, § 3.5 of the Stockholders Agreement contains the following provision, entitled "Joint Ventures":

> If Jie Bao (or Jason Norris) is to commercialize the Company's technology with another entity, he will use best efforts so that such entity provides Jason Norris (or Jie Bao if Jason Norris is commercializing) the same relative percentage ownership to Jie Bao (or Jason Norris if Jason Norris is commercializing) as he has in the Company as of the date hereof.

Pet'r 9/19/18 App. 6. The Stockholders Agreement also contains a "Dispute Resolution" provision that states, in pertinent part, that "[t]he arbitrator shall not have power to award damages in excess of actual compensatory damages and shall not multiply actual damages or award punitive damages, and each party hereby irrevocably waives any claim to such damages." *Id.* at 10.

In order to commercialize the QDS technology, QDuality entered into an exclusive license agreement with MIT.[1] Norris and Dr. Bao also formed other companies, including QDChip, to market and sell products incorporating the QDS technology. Although Norris and Dr. Bao pursued venture financing with several investors, they were ultimately

---

[1]MIT owned the patent application of the QDS technology invented, in part, by Dr. Bao.

unsuccessful. In May 2016 Norris notified Dr. Bao that he was terminating their business relationship.

In September 2016 Dr. Bao formed a new company—QuantaEye—to develop and commercialize the QDS technology. Norris did not invest in QuantaEye, and Dr. Bao did not provide Norris with any equity in the company. In early 2017, three third-party venture capital funds invested $4 million in exchange for a 15% equity stake in QuantaEye. In addition, from August 2016 to the present, Dr. Bao and/or QuantaEye has been negotiating with MIT about a license to the QDS technology. QuantaEye has not yet developed or sold any products using QDS technology and has not yet secured a license from MIT to commercialize the QDS technology.

In May 2017 Norris, individually, and derivatively on behalf of QDuality, commenced an arbitration proceeding against Dr. Bao, seeking damages based on Dr. Bao's alleged breach of § 3.5 of the Stockholder's Agreement. Following arbitration in Dallas, the arbitrator entered a Final Award ("Award"). She concluded, in pertinent part:

> Dr. Bao breached his duties under Section 3.5 of the Stockholders Agreement. Not only did Dr. Bao fail to provide Mr. Norris with equity in QuantaEye in the same relative percentage that Dr. Bao and Mr. Norris held in QDuality, but Dr. Bao made no effort to do so. As Dr. Bao testified, he established QuantaEye on his own. He had no investors and no partners at the time he founded the company. Accordingly, nothing prevented Dr. Bao from providing Mr. Norris with equity in QuantaEye as required under the terms of the Stockholders Agreement; Dr. Bao simply chose not to do so. As a result, Dr. Bao breached the Stockholders Agreement.

*Id.* at 58. She awarded Norris $5,939,394.00 in damages, calculated as follows:

> Under Section 3.5 of the Stockholders Agreement, if Dr. Bao is to commercialize the QDS technology with another entity, then Dr. Bao is obligated to use best efforts to ensure that Mr. Norris has equity in that new venture in the same relative percentage that Dr. Bao and Mr. Norris had at the time of the QDuality Stockholders Agreement. At that time, Dr. Bao held 900,000 shares in Qduality and Mr. Norris held 420,000 shares. As such, the Dr. Bao and Mr. Norris' relative ownership interests in QDuality were 68.18 percent and 31.82 percent, respectively. Applying this ratio to Dr. Bao's 70 percent stake in QuantaEye results in a 22.27 percent ownership stake for Mr. Norris. Because QuantaEye's value is $26,666,667 as paid by actual investors, Mr. Norris's damages resulting from Dr. Bao's breach of Section 3.5 of the Stockholders Agreement is $5,939,394.

*Id.* at 59.[2]

In 2018 Norris filed an application to confirm the Award. Dr. Bao moves to vacate or modify the Award pursuant to 9 U.S.C. §§ 10 and 11, contending that, under Delaware law, "actual compensatory damages" are measured by a party's out-of-pocket actual loss, and that the arbitrator exceeded her authority by awarding Norris damages in excess of his $500,000 investment in QDuality.

II

Review of an arbitration award is "exceedingly deferential." *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F.Supp.2d 545, 548 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004)). When the Federal Arbitration Act ("FAA") applies, as here, the court will set aside an arbitration award

---

[2]The arbitrator determined QuantaEye's value based on the fact that, in early 2017, three third-party venture capital funds invested $4 million for a 15% equity stake in QuantaEye.

"only in very unusual circumstances." *Fountoulakis v. Stonhard, Inc.*, 2003 WL 21075931, at *4 (N.D. Tex. May 9, 2003) (Fitzwater, J.) (quoting *Williams v. CIGNA Fin. Advisors Inc.*, 197 F.3d 752, 757 (5th Cir. 1999)). Courts "must" confirm the arbitration award unless there is a ground for correction, modification, or vacatur under 9 U.S.C. § 10(a) or 11. *See Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (holding there are no longer nonstatutory grounds for vacating arbitration awards). Section 10(a), which prescribes the grounds for vacating an arbitration award,[3] "does not provide for vacatur of an arbitration award based on the merits of a party's claim," and thus the court "do[es] not have authority to conduct a review of an arbitrator's decision on the merits." *Householder Grp. v. Caughran*, 354 Fed. Appx. 848, 851 (5th Cir. 2009) (per curiam) (citing *Kergosien*

---

[3] 9 U.S.C. § 10(a) provides:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*v. Ocean Energy, Inc.*, 390 F.3d 346, 357 (5th Cir. 2004), *overruled on other grounds by Citigroup Glob. Mkts., Inc.*, 562 F.3d 349). "The court may not vacate the [arbitrator's] award based on mere errors in interpretation or application of the law, or mistakes in factfinding." *Weber*, 455 F.Supp.2d at 549 (alteration in original) (quoting *Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 726 (N.D. Tex. 1997) (Fitzwater, J.)). "The court must resolve any doubts or uncertainties in favor of upholding the award." *Id.* (citing *Brabham*, 376 F.3d at 385 n.9). "By consenting to arbitration, parties exchange 'the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Mantle*, 956 F. Supp. at 726 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). "The question the court asks is 'whether the arbitration proceedings were fundamentally unfair.'" *Weber*, 455 F.Supp.2d at 549 (quoting *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1020 (5th Cir. 1990)).

III

A

Dr. Bao maintains that the Award should be vacated because the arbitrator exceeded the scope of her powers by awarding damages to Norris that were not his "actual compensatory damages" measured by his "out-of-pocket actual loss," as Delaware law[4] requires. Dr. Bao posits that the only evidence of Norris' out of pocket actual loss in

---

[4]The Stockholders Agreement provides that it "shall be governed by and construed in accordance with the General Corporation Law of the State of Delaware as to all matters, without regard to its principles of conflicts of laws." Pet'r 9/19/18 App. 9. In the Award, the arbitrator expressly recognized that "Delaware law is applicable to all claims." *Id.* at 57.

- 6 -

connection with the breach of the Stockholders Agreement is his investment in QDuality in the form of a $500,000 convertible promissory note; that the arbitrator exceeded the scope of her powers under the arbitration agreement by awarding Norris $5,939,394.00 in damages, without even attempting to explain what specific measure of damages she was applying or how that measure was consistent with the limitations of the arbitration agreement or Delaware law; and that in awarding such damages to Norris, the arbitrator impermissibly crafted her own measure of damages based on the purported value that Norris' ownership interest in QuantaEye would have had in early 2017 when three third-party venture capital funds invested $4 million in exchange for a 15% stake in QuantaEye.

Norris responds that, because the arbitrator's decision was within her authority and inferable from the Stockholders Agreement, Dr. Bao's motion should be denied. He maintains that, under Delaware law, compensatory damages may include "expectation damages," i.e., the amount it would take to put a promisee in the same position he would have occupied had the promisor performed the contract; that actual damages are not limited under Delaware law to amounts paid "out-of-pocket"; that the arbitrator made clear that her damages award was an attempt to make Norris whole, i.e., to place him in the position he would have been had Dr. Bao followed through on his contractual agreement to provide him equity in QuantaEye; that the Award states a rational relationship of the selected remedy to the Stockholders Agreement; and that because the arbitrator's decision can be rationally inferred from the Stockholders Agreement, Dr. Bao's motion to modify or vacate the arbitration award should be denied.

B

To determine whether an arbitrator has exceeded her powers, the court "must examine the language in the arbitration agreement." *Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003). The sole question under § 10(a)(4) "is whether the arbitrators even arguably interpreted the [a]greement in reaching their award; it is not whether their interpretations of the [a]greement or the governing law were correct." *BNSF Ry. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 789 (5th Cir. 2015); *see also Glover*, 334 F.3d at 475 (The court "must sustain an arbitration award even if [it] disagree[s] with the arbitrator's interpretation of the underlying contract as long as the arbitrator's decision draws its essence from the contract." (quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994))). "However, where the arbitrator exceeds the express limitations of [her] contractual mandate, judicial deference is at an end." *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602 (5th Cir. 1989). In other words, if the contract "creates a plain limitation on the authority of an arbitrator, [the court] will vacate an award that ignores the limitation." *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007), *overruled on other grounds by Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584-86 (2008).

For example, in *Smith v. Transport Workers Union of America, AFL-CIO Air Transport Local 556*, 374 F.3d 372 (5th Cir. 2004), the arbitration panel modified its award one month after issuing it, although the arbitration agreement stated that "[t]he arbitrators *sua sponte* may amend or correct their award within three business days after the award, but the

parties shall not have a right to seek correction of the award." *Id*. at 374. The Fifth Circuit held that the plain wording in the agreement demonstrated the parties' intent to limit the panel from correcting or amending its decision "on the arbitrators['] own motion more than three business days after the award." *Id*. at 375. Because the panel modified the original award outside this time frame, the Fifth Circuit concluded that it acted beyond the reach of its power, and it affirmed the district court's judgment vacating the modified award and confirming the original award. *Id*.

In *Davey v. First Command Financial Services, Inc.*, 2012 WL 277968 (N.D. Tex. Jan. 31, 2012) (Fish, J.), Judge Fish considered whether an arbitration panel had exceeded its authority by awarding punitive damages. The contract between the two parties stated that "the arbitrator [would] not have the right to award exemplary or punitive damages." *Id.* at *2. The arbitration panel explicitly awarded the plaintiff $375,000 in punitive damages. *Id.* The defendant argued that the court should vacate the panel's award of punitive damages because the arbitration agreement expressly prohibited the awarding of punitive damages. Judge Fish agreed and vacated the arbitration award "[b]ecause there [was] a plain and unambiguous provision in the agreement that prohibits punitive damages." *Id.* at *4. He concluded that the arbitration panel had acted in contravention of the arbitration agreement by awarding punitive damages. *Id.*

Here, the Stockholders Agreement provides that "[t]he arbitrator shall not have power to award damages in excess of actual compensatory damages and shall not multiply actual damages or award punitive damages, and each party hereby irrevocably waives any claim to

- 9 -

such damages." Pet'r 9/19/18 App. 10. The agreement does not prescribe how actual compensatory damages are to be calculated. The Award quotes this provision of the Stockholders Agreement, *id.* at 32; states that the "damage calculations are not speculative and/or based on conjecture," *id.* at 60; and explains that a "monetary recovery of $5,939,394 *compensates* [Norris] for his damages," *id.* (emphasis added). The arbitrator did not award punitive damages and did not award damages beyond what she found would compensate Norris for his actual damages. Unlike the arbitrators in *Smith* and *Davey*, the arbitrator in this case conformed her award to the plain limitations expressed in the Stockholders Agreement—i.e., she did not award damages in excess of what she found to be Norris' actual compensatory damages.

As the court explains above, it must defer to the findings and determinations reached by the arbitrator on the issue of damages in this case. The court may not overturn the arbitrator's decision "based on the merits of a party's claim," because the court does "not have the authority to conduct a review of an arbitrator's decision on the merits." *Householder Grp.*, 354 Fed. Appx. at 851; *see also Citigroup Glob. Mkts., Inc.*, 562 F.3d at 351 (stating that awards are upheld "even if based upon error in law or fact."). Thus even assuming *arguendo* that the arbitrator incorrectly applied Delaware law in calculating actual compensatory damages, the court lacks the authority to review that decision, provided the arbitrator did not exceed the scope of the Stockholders Agreement, i.e., that she was purporting to award as damages what she found to be Norris' actual compensatory damages. So long as the "arbitrator is even arguably construing or applying the contract and acting

within the scope of [her] authority," the award must stand. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citation omitted).

The court holds that the arbitrator acted in accordance with the powers delegated to her under the Stockholders Agreement. Resolving all doubts in favor of the arbitration award, Dr. Bao has not shown a basis for vacating the arbitration award under § 10(a)(4) of the FAA. Accordingly, his motion to vacate the Award is denied.

IV

Dr. Bao moves, in the alternative, to modify or correct the Award under 9 U.S.C. § 11(a), which provides that the district court may make an order modifying or correcting an arbitration award "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." He maintains that the Award "reflects that Norris was only 'out of pocket' $500,000," and that "Norris was never 'out of pocket' $5,939,394, but that this amount was 'based on value paid by third party investors,'" and he requests that the Award be modified to correct the arbitrator's miscalculation of Norris' actual compensatory damages in the form of out of pocket losses by awarding Norris the sum of $500,000. Resp't Br. 13.

Under the Federal Arbitration Act, awards may be modified when there is "an evident material miscalculation of figures." 9 U.S.C. § 11(a). An "evident material calculation" occurs "where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award." *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 214

(5th Cir. 1993) (citing *Nat'l Post Office v. U.S. Postal Serv.*, 751 F.2d 834, 843 (6th Cir. 1985)). In this case, there was no "evident material miscalculation." As Norris points out in his response, Dr. Bao's alternative motion for modification of the Award under § 11(a) relies entirely on his argument that Norris was not damaged more than $500,000 because he was never "out of pocket" more than that amount. This argument, however, rests on an alleged mistake of *law*, not a mistake of *fact*. For the reasons explained above, the court will not review the merits of the arbitrator's decision to calculate compensatory damages as she did. Because the arbitrator acted within the scope of her authority in calculating and awarding compensatory damages, and because Dr. Bao has not established that the arbitrator relied on an unambiguous and undisputed mistake of fact, the court denies Dr. Bao's alternative motion to modify or correct the Award under 9 U.S.C § 11(a).

V

Section 9 of the FAA provides that the court must grant an application to confirm an arbitration award unless it determines that the award should be vacated under 9 U.S.C. § 10 or modified or corrected under 9 U.S.C. § 11. The court today concludes that the Award should not be vacated under § 10 or modified under § 11. Accordingly, the court grants Norris' application for confirmation of the Award.[5]

---

[5]In his response to Dr. Bao's motion, Norris requests that the court grant his pending application to confirm the Award and grant him attorney's fees, costs of court, and all other relief deemed just and proper. Norris is entitled to his taxable court costs pursuant to Fed. R. Civ. P. 54(d)(1), and these costs are awarded by judgment filed today. Norris has not demonstrated a basis to recover attorney's fees for prosecuting this suit. Accordingly, his request is denied without prejudice to his seeking relief through the procedure prescribed by

\* \* \*

For the reasons explained, the court grants Norris' October 25, 2018 second amended application for confirmation of arbitration award and denies Dr. Bao's October 18, 2018 motion to modify or vacate arbitration award.

**SO ORDERED**.

January 10, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

Rule 54(d)(2), if he has a basis to do so.